## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| APCO LIQUIDATING TRUST and | ) | Case Nos. 05-12355 (BLS) |
| APCO MISSING STOCKHOLDER TRUST, | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

### NOTICE OF APPEAL

COMES NOW the CITY OF WICHITA, KANSAS, a creditor in the captioned

bankruptcy case, and appeals under 28 U.S.C. § 158(a) to the United States District Court for the

District of Delaware from (i) the Order entered in this case on June 29, 2007[1] and (ii) the

Memorandum Opinion entered in this case on June 27, 2007[2]. Copies of the order and

memorandum opinion are attached hereto and marked Exhibits A and B, respectively.   In

addition to the City of Wichita, the names of all the parties to the Order appealed from and the

names, addresses, and telephone numbers of their respective attorneys are as follows:

*[Remainder of Page Left Intentionally Blank]*

---

[1] Docket No. 278.

[2] Docket No. 277.

| PARTY | ATTORNEYS |
|---|---|
| City of Wichita Kansas | Jeffrey R. Waxman, Esquire<br>Cozen O'Connor<br>1201 N. Market Street, Suite 1400<br>Wilmington, DE 19801<br>(302) 295-2000<br><br>Mark S. Carder, Esquire<br>Stinson Morrison Hecker, LLP<br>1201 Walnut Street, Suite 2900<br>Kansas City, MO 64106-2150<br>(816) 842-8600<br><br>OFFICE OF THE CITY ATTORNEY<br>Gary E. Rebenstorf, City Attorney<br>Joe Allen Lang, Chief Deputy City Attorney<br>Sharon L. Dickgrafe, Ass't City Attorney<br>City Hall – 13th Floor<br>455 North Main Street<br>Wichita, KS 67202<br>(316) 268-4681 |
| Apco Liquidating Trust | John Henry Knight, Esquire<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>P.O. BOX 551<br>Wilmington, DE 19899<br>(302) 651-7700<br><br>Neal H. Weinfield, Esquire<br>Greenburg Traurig LLP<br>77 W. Wacker Dr., Ste. 2500<br>Chicago, IL 60601-1732<br>(312) 456-8400 |

Dated: July 9, 2007

COZEN O'CONNOR

Jeffrey R. Waxman (No. 4159)
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013

Mark S. Carder, Esquire
Stinson Morrison Hecker, LLP
1201 Walnut Street, Suite 2900
Kansas City, MI 64106-2150
Telephone:  (816) 842-8600
Facsimile:  (816) 691-3495

and

CITY OF WICHITA, KANSAS
OFFICE OF THE CITY ATTORNEY
Gary E. Rebenstorf, City Attorney
Joe Allen Lang, Chief Deputy City Attorney
Sharon L. Dickgrafe, Ass't City  Attorney
City Hall – 13th Floor
455 North Main Street
Wichita, KS  67202
Telephone:  (316) 268-4681
Facsimile:  (316) 268-4335

*Counsel to City of Wichita, Kansas*

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | ) |
| | ) Case No. 05-12355 (BLS) |
| APCO LIQUIDATING TRUST and | ) |
| APCO MISSING STOCKHOLDER | ) Chapter 11 |
| TRUST, | ) |
| | ) Jointly Administered |
| Debtors. | ) |

## ORDER

AND NOW, this **29th** day of **JUNE, 2007,** upon consideration of

the Objection of the Liquidation Trustee to Claim Nos. 22 and 23

Filed by the City of Wichita, Kansas and Motion to Estimate, if

Necessary (the "Objection"), the response of the City of Wichita,

Kansas thereto, and for the reasons set forth in the accompanying

Memorandum Opinion, it is hereby **ORDERED** that the Objection is

**SUSTAINED** and Claim No. 26 is hereby **DISALLOWED** pursuant to 11

U.S.C. § 502(e)(1)(B).

BY THE COURT:

BRENDAN LINEHAN SHANNON
United States Bankruptcy Judge

1

## SERVICE LIST

John H. Knight, Esq.
Jason M. Madron, Esq.
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Counsel to the Liquidating Trust

Jeffrey R. Waxman, Esq.
COZEN & O'CONNOR
1201 N. Market Street
Suite 1400
Wilmington, Delaware  19801
Counsel to the City of Wichita, Kansas

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 05-12355 (BLS) |
| APCO LIQUIDATING TRUST and | ) | |
| APCO MISSING STOCKHOLDER | ) | Chapter 11 |
| TRUST, | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Objection of the Liquidation Trustee to Claim Numbers 22 and 23[2] Filed by the City of Wichita, Kansas and Motion to Estimate, if Necessary (the "Objection") [Docket No. 233]. For the reasons stated below, the Court will sustain the Objection and disallow the claims pursuant to section 502(e)(1)(B) of the Bankruptcy Code (the "Code").

**BACKGROUND**

Almost twenty years prior to the filing of the above-captioned bankruptcy cases (the "Cases"), in 1986, the Kansas Department of Health and Environment ("KDHE") discovered hazardous contaminants in the groundwater at a 3,850 acre industrial area near the city center of Wichita, known as the

---

[1] This Opinion constitutes the findings of facts and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

[2] Claim Numbers 22 and 23 have been amended and superceded by Claim Number 26. This Memorandum Opinion, therefore, addresses Claim Number 26.

1

Gilbert and Mosley site (the "G&M Site").[3]  The G&M Site contains approximately 8,000 parcels of land, over 400 of which are owned by the City.  One parcel within the G&M Site, located at 1001 East Lincoln Street ("1001 E. Lincoln"), was owned by APCO Oil Corporation[4] until 1971.

Four years after the initial contamination discovery, KDHE completed an investigation into the potential and actual contamination at the G&M Site pursuant to the Comprehensive Environmental Response, Comprehension and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675 (2006).  It located multiple sources of groundwater contamination and identified over 500 potentially responsible parties ("PRPs").  Shortly thereafter, on March 26, 1991, the City, which had not been identified as a PRP at that time, voluntarily entered into an agreement with KDHE,

---

[3]    The facts and circumstances of the events surrounding the G&M Site contamination recounted herein are substantially derived from the two Memorandum Opinions of the United States District Court for the District of Kansas resolving the City's lawsuit commenced in 1998 against twenty-seven alleged PRPs.  The Memorandum Opinions - City of Wichita v. Aero Holdings, Inc., 177 F. Supp. 2d 1153 (D. Kan. 2000), and City of Wichita v. Trustees of APCO Oil Corp. Liquidating Trust, 306 F. Supp. 2d 1040 (D. Kan. 2003) - are attached as Exhibits A and B to the Supplemental Memorandum of Law in Support of the Liquidation Trustee's Objection to Claim by City of Wichita, Kansas [Docket No. 257] [hereinafter, Memorandum of Law].

[4]    APCO Oil Corporation was voluntarily dissolved by its shareholders on September 29, 1978.  Shortly thereafter, APCO Liquidating Trust and the APCO Missing Stockholder Trust (the "Debtors") were formed pursuant to an order of the Court of Chancery of the State of Delaware.

entitled "Settlement Agreement for Remedial Investigation and Feasibility Study, and for Certain Remedial Actions to be Determined Following Opportunity for Public Involvement" (the "City/KDHE Agreement").  See generally Memorandum of Law, Ex. C. Pursuant to the City/KDHE Agreement, the City agreed to perform a remedial investigation and feasibility study ("RI/FS") of the G&M Site and, ultimately, to undertake the remedial activities identified in the RI/FS necessary to clean up the G&M Site.

Seven years later, the City commenced a lawsuit pursuant to sections 9607(a) and 9613(f)(1) of CERCLA in the United States District Court for the District of Kansas seeking to recover its past and future response costs of investigating and cleaning the contamination from twenty-seven alleged PRPs, including the Debtors (the "Wichita Action").  After a lengthy trial, the Debtors were determined to be liable under section 9613(f)(1) for 1.72% of the City's past and future response costs of groundwater remediation for the entire G&M Site and for 100% of the City's future source control costs to be incurred at 1001 E. Lincoln. See City of Wichita v. Trs. of APCO Oil Corp. Liquidating Trust, 306 F. Supp. 2d 1040, 1046 (D. Kan. 2003) [hereinafter Wichita Judgment].  In 2004, the Debtors partially satisfied the Wichita Judgment, paying $467,273.10 for their 1.72% allocable share of the City's groundwater remediation costs for the entire G&M Site.

On August 19, 2005, the Debtors commenced the Cases, seeking

3

protection under chapter 11 of the Code.  The City timely filed a proof of claim ("Claim No. 26") based upon the unsatisfied portion of the Wichita Judgment awarding the City 100% of the future source control costs to be incurred at 1001 E. Lincoln. Claim No. 26 estimates the City's future source control costs to be $1,325,527.  See Objection, Ex. G.  The United States Environmental Protection Agency also filed a proof of claim seeking reimbursement for $32,112.31 in past response costs incurred at the G&M Site.  See Memorandum of Law, Ex. C.  KDHE has not filed a proof of claim against the Debtors based upon the contamination of the G&M Site.

On December 12, 2006, John G. McMillian, the liquidation trustee (the "Liquidation Trustee"), filed the Objection, primarily urging this Court to disallow Claim No. 26 because (1) it is a contingent claim for contribution pursuant to section 502(e)(1)(B); and (2) the City cannot maintain a cause of action under CERCLA after the Supreme Court's decision in Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157 (2004). On December 29, 2006, before the City responded to the Objection, the Liquidation Trustee filed a motion to transfer venue of the Objection to the United States District Court for the District of Kansas (the "Motion to Transfer Venue") [Docket No. 237].

A hearing on the Motion to Transfer Venue was held on January 18, 2007, at which time the Court decided to withhold

4

ruling on the Motion to Transfer Venue pending disposition of the legal question of disallowance under section 502(e)(1)(B). To that end, the Court requested further briefing regarding section 502(e)(1)(B) and the Supreme Court's decision in Aviall.

On March 28, 2007, the City responded to the Objection, denying that Claim No. 26 was a contingent claim for contribution. According to the City, the claim arose from a final judgment rendering the Debtors directly liable to the City (and thus, not liable via principles of contribution) for the future source control costs to be incurred at 1001 E. Lincoln. Further, the City opposed any adverse application of Aviall to its claim, arguing that: (1) the principles of stare decisis and res judicata prevent the parties from re-litigating issues resolved by the Wichita Judgment; (2) the standards of Federal Rule of Civil Procedure 60(b)(5) do not apply to allow the Debtors to obtain relief from the Wichita Judgment; and finally, (3) even if the Court were to grant relief from the Wichita Judgment under Rule 60(b)(5) and apply Aviall, the City continues to have causes of action under both section 9613(f)(1) and 9607(a) of CERCLA.

A hearing on the Objection was held on May 5, 2007, at which time the Court took the matter under advisement.

This matter is ripe for decision.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

**DISCUSSION**

I.    Disallowance Pursuant to 11 U.S.C. § 502(e)(1)(B)

The Debtors contend that Claim No. 26 must be disallowed under section 502(e)(1)(B) because it is a contingent claim for contribution.  Pursuant to section 502(e)(1)(B), "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that . . . such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution . . . ."  11 U.S.C. § 502(e)(1)(B).  For a claim to be disallowed under this section, three requirements must be satisfied:  "(1) the claim must be one for reimbursement or contribution; (2) the entity asserting the claim for reimbursement or contribution must be 'liable with the debtor' on the claim; and (3) the claim must be contingent at the time of its allowance or disallowance."  In re Provincetown-Boston Airlines, Inc., 72 B.R. 307, 309 (Bankr. M.D. Fla. 1987); accord In re Eagle-Picher Indus., Inc., 164 B.R. 265, 268 (S.D. Ohio 1994); In re GCO Servs., LLC, 324 B.R. 459,

6

465 (Bankr. S.D.N.Y. 2005); In re Drexel Burnham Lambert Group,
148 B.R. 982, 985 (Bankr. S.D.N.Y. 1992). Because the Court
concludes that Claim No. 26 satisfies each of these three
requirements, the claim must be disallowed.

First, Claim No. 26 is a claim for contribution. "Whether a
claim is one for reimbursement or contribution depends on its
characterization under state or federal statutory law or common
law." 4 COLLIER ON BANKRUPTCY ¶ 502.06[2][a] (Alan N. Resnick et
al. eds., 15th ed. rev. 2006); see, e.g., Provincetown-Boston, 72
B.R. at 310 ("[The Debtor's] duty to indemnify [the claimant] if
both are found ultimately liable in the class action suit would
arise independent of the Underwriting Agreement under the joint
and several liability created by federal statute.").

Under CERCLA, two distinct causes of action have been
created by Congress: "cost recovery" under 42 U.S.C. § 9607(a),
commonly known as section 107(a), and "contribution" under 42
U.S.C. § 9613(f)(1), commonly known as section 113(f)(1). Under
a section 107(a) "cost recovery" action,[5] a party, such as a

---

[5]    Section 107(a) provides, in pertinent part:

Notwithstanding any other provision or rule
of law, and subject only to the defenses set
forth in subsection (b) of this section -

. . .

(2) any person who at the time of disposal
of any hazardous substance owned or operated
any facility at which such hazardous

private party landowner or the United States government, who has

incurred cleanup and remediation costs at a hazardous waste site,

may seek to recover its full response costs from a party or

parties who may be potentially responsible for the contamination.

See generally United States v. Atl. Research Corp., 127 S. Ct.

2331 (2007).  The apportionment of liability under section 107(a)

is strict, joint, and several - "without regard to fault or

willfulness".  H.R. Rep. No. 99-253(I), at 74 (1985), reprinted

in 1986 U.S.C.C.A.N. 2835, 2856; New Castle County v. Halliburton

Nus Corp., 111 F.3d 1116, 1120-21 (3d Cir. 1997); In re Kaiser

---

substances were disposed of,

. . .

shall be liable for -

(A)  all costs of removal or remedial
action incurred by the United States
Government or a State or an Indian tribe not
inconsistent with the national contingency
plan;

(B)  any other necessary costs of
response incurred by any other person
consistent with the national contingency
plan;

(C)  damages for injury to, destruction
of, or loss of natural resources, including
the reasonable costs of assessing such
injury, destruction, or loss resulting from
such a release; and

(D)  the costs of any health assessment
or health effects study . . . .

42 U.S.C. § 9607(a).

8

Group Int'l, Inc., 289 B.R. 597, 602 (Bankr. D. Del. 2003).

Therefore, under section 107(a), "once liability is demonstrated,

a [defendant] PRP may be held liable for the entire cost of

cleanup, even if multiple PRPs are involved." Wichita Judgment

at 1048-49.

Under a section 113(f)(1) "contribution" action,[6] a PRP is

granted the right to recoup from other PRPs the portion of its

cleanup and remediation costs "which exceeds its fair share of

the overall liability." New Castle County, 111 F.3d at 1121; see

also Atl. Research, 127 S. Ct. at 2331; Kaiser, 289 B.R. at 603.

In other words, under section 113(f)(1), "an individual PRP which

has been left with the entire cleanup cost . . . may seek

contribution from and attempt to apportion liability to other

---

[6]     Section 113(f) provides, in pertinent part:

(1)  Contribution

Any person may seek contribution from any
other person who is liable or potentially
liable under section 9607(a) of this title,
during or following any civil action under
section 9606 of this title or under section
9607(a) of this title. . . . .  In resolving
contribution claims, the court may allocate
response costs among liable parties using
such equitable factors as the court
determines are appropriate.  Nothing in this
subsection shall diminish the right of any
person to bring an action for contribution in
the absence of a civil action under section
9606 of this title or section 9607 of this
title.

42 U.S.C. § 9613(f)(1).

PRPs . . . ." <u>Wichita Judgment</u> at 1049.  In contrast to a

section 107(a) action in which liability is joint and several,

under section 113(f)(1), a court is called upon to allocate the

response costs among the PRPs based upon each PRP's percentage of

fault and, to do so, may use "such equitable factors as the court

determines are appropriate."  42 U.S.C. § 9613(f)(1).

In the instant case, Claim No. 26 arises from a declaratory

judgment obtained by the City against the Debtors for

contribution under section 113(f)(1).  <u>See generally</u> <u>Wichita

Judgment</u> at 1117-18.  Because, as a matter of law, section

113(f)(1) provides only for an express right of contribution, the

first requirement of section 502(e)(1)(B) has been satisfied.

<u>See, e.g.</u>, <u>Syntex Corp. v. Charter Co. (In re Charter Co.)</u>, 862

F.2d 1500, 1502-03 (11th Cir. 1989) ("These claims fall within

the ambit of § 502(e)(1)(B).  All are claims for reimbursement or

contribution pursuant to 42 U.S.C. § 9613(f)(1) . . . ."); <u>Eagle-

Picher</u>, 164 B.R. at 268 ("The parties further agreed that the

claims in issue are for reimbursement, since the claimants seek

payment from [the Debtor] for costs in be incurred and their

claims arise under CERCLA § 113(f) . . . ."); <u>In re New York Trap

Rock Corp.</u>, 153 B.R. 648, 651 (Bankr. S.D.N.Y. 1993) ("A

contingent CERCLA claim that is not a direct claim between the

parties but depends upon the co-liability of the parties . . . is

a disallowable claim for reimbursement or contribution"); <u>In re</u>

Cottonwood Canyon Land Co., 146 B.R. 992, 996-97 (Bankr. D. Colo. 1992) (holding claim subject to section 502(e)(1)(B) because, while claimant argued it sought allowance of a direct claim under section 107(a) of CERCLA, court determined that claimant clearly sought contribution from the Debtor).

In support of the allowance of Claim No. 26, the City has argued that, because the Wichita Judgment held the Debtors 100% liable for the future source control costs at 1001 E. Lincoln, and not merely for their allocable share, its claim is not one for contribution under section 113(f)(1), but rather, one for a direct cost recovery under section 107(a).  The Court cannot agree.  First, and perhaps, most importantly, the District Court in Kansas determined that the City was a PRP, and further determined that the City was precluded from maintaining a cost recovery action under section 107(a).  Wichita Judgment at 1050-52.[7]  Therefore, foreclosed from maintaining a cause of action under section 107(a), the Court held that the City could "only bring a contribution action under CERCLA § 113(f)."  Id. at 1052. It was exclusively under this section of CERCLA that the Court premised the Debtors' liability.  See generally id. at 1050, 1117-18.

---

[7]    As more thoroughly discussed herein, the Supreme Court recently has held that PRPs may maintain a cost recovery action under section 107(a).  See Atl. Research, 127 S. Ct. at 2331.

Second, despite the City's assertions to the contrary, the Debtors were, in fact, held liable for their allocable share of the City's future source control costs to be incurred at the entire G&M Site. Following the City/KDHE Agreement, the City became responsible for all of the future source control costs to be incurred at the entire G&M Site notwithstanding the City's actual percentage of fault. Because of this inequitable distribution of liability, shortly thereafter, pursuant to section 113(f)(1), the City sought contribution from the Debtors' for their allocable share of these overall costs. Id. at 1117. Rather than declaring the Debtors liable for a percentage of the source control measures to be taken at the approximate 8,000 parcels within the G&M Site, the Court determined that the Debtors were liable only for the measures to be taken at one parcel - 1001 E. Lincoln. Id. The future source control costs for this parcel amount to the Debtors' allocable share of the City's overall liability for the future source control costs to be incurred at the entire G&M Site. As such, Claim No. 26 arises from a claim for contribution, fulfilling the first requirement of section 502(e)(1)(B).

Because Claim No. 26 arises from a section 113(f)(1) claim for contribution, it is, as a matter of law, a claim for which both the City and the Debtors are responsible, thereby fulfilling the second, and perhaps most important, requirement of section

12

502(e)(1)(B).  See 4 COLLIER ON BANKRUPTCY ¶ 502.06[2][d] ("In

addition to codebtor situations created by contract, section

502(e)(1)(B) applies to disallow contingent reimbursement or

contribution claims created by statute.  For example, a claim for

contribution arising under [CERCLA] may be a contingent claim

subject to disallowance under section 502(e)(1)(B).  In such a

case, the government is the primary obligee that may seek

satisfaction of its claim against the debtor from third parties

who, under the statute, are obligated with the debtor to the

government on the same debt.  The statute under which the

third-party liability is created, however, must provide for a

reimbursement or contribution claim against the debtor."); see

also Cottonwood Canyon, 146 B.R. at 996 (explaining that a

contribution claim under CERCLA "would necessarily be one for

liability for which both [the claimant and the debtor] are

responsible and would fall within the ambit of 11 U.S.C. §

502(e)."); In re Baldwin-United Corp., 55 B.R. 885, 891 (Bankr.

S.D. Ohio 1985) (applying section 502(e)(1)(B) to contribution

claims arising under securities laws and noting, "By its very

nature a claim for contribution presupposes a sharing of

liability and thus a codebtor relationship."); accord GCO, 324

B.R. at 466 (disallowing contribution claims arising under

ERISA).

    "The co-liability requirement – that the claimant be 'liable

with' the debtor on the claim of a third party 'creditor' -
illuminates the central purpose of § 502(e)(1)(B)." <u>Dant &</u>
<u>Russell, Inc. v. Burlington N. R.R. Co. (In re Dant & Russell,</u>
<u>Inc.)</u>, 951 F.2d 246, 248 (9th Cir. 1991).  "The sole purpose
served by section 502(e)(1)(B) is to preclude redundant
recoveries on identical claims against insolvent estates in
violation of the fundamental Code policy fostering equitable
distribution among all creditors of the same class." <u>Juniper</u>
<u>Dev. Group v. Kahn (In re Hemingway Transp., Inc.)</u>, 993 F.2d 915,
923 (1st Cir. 1993); <u>accord</u> <u>Dant & Russell</u>, 951 F.2d at 248.

While no "double-dipping" threat applies to claims arising
under section 107(a) due to the lack of a third party creditor,
claims premised upon section 113(f)(1) do implicate such a
threat.  This is because a judgment obtained under section
113(f)(1) presupposes co-liability between the plaintiff and the
defendant.  "A prima facie showing under § 113(f) is simply a
determination that the defendant PRP would otherwise be held
jointly and severally liable under § 107(a)." <u>Wichita Judgment</u>
at 1049.  As the court in <u>Farmland Industries, Inc. v. Colorado &</u>
<u>Eastern Railroad Co.</u> explained:

> In <u>Environmental Transp. Systems, Inc. v.</u>
> <u>ENSCO, Inc.</u>, 969 F.2d 503, 509 (7th Cir.
> 1992) . . ., the Seventh Circuit set forth
> the elements of a prima facie case for
> contribution under § 9613(f) as follows: "(1)
> that the site in question is a 'facility' as
> defined by CERCLA; (2) that the Defendant is
> a 'responsible person' for the spill as

14

> defined by CERCLA; (3) there was a release of
> hazardous substances; and (4) such release
> caused the Plaintiff to incur response
> costs." Id. at 506. "If the plaintiff
> establishes each of these elements and the
> defendant is unable to establish the
> applicability of one of the defenses listed
> in § 9607(b) the plaintiff is entitled to
> summary judgment on the liability issue."
> Amoco Oil Co. v. Borden, Inc., 889 F.2d 664,
> 668 (5th Cir. 1989). A prima facie showing
> under § 9613 is, therefore, simply a
> determination that under § 9607 the defendant
> would be jointly and severally liable.

922 F. Supp. 437, 440 (D. Colo. 1996), remanded by 50 F.3d 1530,

1536 (10th Cir. 1995) ("In our case, Farmland's claim against the

CERC parties must be classified as one for contribution. . . .

Whatever label Farmland may wish to use, its claim remains one by

and between jointly and severally liable parties for an

appropriate division of the payment one of them has been

compelled to make.").

Here, the City successfully proved the elements of section

113(f)(1) to obtain an award of contribution from the Debtors.

Therefore, as a matter of law, the Debtors are co-liable with the

City to KDHE for the future source control costs at 1001 E.

Lincoln.

The City argues that KDHE's failure to timely file a proof

of claim in these Cases vitiates any co-liability the Debtors may

have with the City to KDHE. In support, the City relies on the

First Circuit's ruling in Hemingway. In Hemingway, a post-

petition purchaser of a contaminated parcel of land sought

15

contribution from the Debtors' estate for future costs of
cleanup.  993 F.2d at 919-20.  The chapter 7 trustee objected,
citing to section 502(e)(1)(B).  <u>Id.</u>  While the purchaser filed a
proof of claim against the estate for these costs, the EPA chose
to forgo that option.  <u>Id.</u> at 925.  Instead, the EPA commenced an
administrative enforcement action against the purchaser.  <u>Id.</u>
According to the court, without the EPA's claim, only "a remote
double-dipping" prospect existed.  <u>Id.</u> at 926.  As a result, the
court in <u>Hemingway</u> remanded the case to provide the chapter 7
trustee and the purchaser time to file a surrogate claim on the
EPA's behalf.  <u>Id.</u> at 929.  Should the trustee or the purchaser
fail to file a surrogate EPA claim, the court held that the
purchaser's claim would be allowed since the purchaser would be
no longer "liable with" the Debtors to the EPA.  <u>Id.</u> at 925-29;
<u>see also</u> <u>Norpak Corp. v. Eagle-Picher Indus., Inc. (In re Eagle-</u>
<u>Picher Indus. Inc.)</u>, 131 F.3d 1185, 1188-89 (6th Cir. 1997)
(remanding case so that lower court could determine whether the
third party creditors' failure to timely file proofs of claim was
the result of excusable neglect); <u>In re A & H, Inc.</u>, 122 B.R. 84,
86 (Bankr. W.D. Wis. 1990) (noting the possibility that had the
codebtor not filed a proof of claim on behalf of the third party
creditor, the debtor may not have been co-liable to the third
party creditor).

　　　Relying on the court's reasoning in <u>Hemingway</u>, the City has

16

argued that, in the instant case, there is no "double dipping threat". Currently, there is no proof of claim filed by KDHE and the bar date has long since passed. Thus, according to the City, KDHE is unable to seek payment from the Debtors' estate for the same future source control costs currently sought by the City. As such, the City urges this Court to find that it is the sole holder of a claim against the Debtors' estate for these costs.

The Court cannot agree with the City's position. In the instant case, it is undisputed that the bar date for KDHE to file a proof of claim passed more than one year ago and that KDHE has failed to file a claim against the Debtors' estates. Nonetheless, the failure of KDHE to file a claim does not alter the co-liability of the Debtors and the City to KDHE. As other courts have observed, "section 502(e) does not require that a proof of claim be filed in the proceeding to be liable with the debtor. Application of [section 502(e)(1)(B)] 'is not premised on the actual filing of multiple claims but, rather, on the existence of such claims.'" In re Lull Corp., 162 B.R. 234, 238 (Bankr. D. Minn. 1993) (quoting Cottonwood Canyon, 146 B.R. at 997).

Moreover, as the court in Eagle-Picher explained, the Hemingway decision does not undermine this Court's determination that the City and the Debtors are co-liable to KDHE, despite KDHE's failure to file a proof of claim:

17

> The appellate decision in Hemingway does not
> undermine the bankruptcy court's reasoning in
> the present case.  The appellate court simply
> determined that the harsh results stemming
> from the application of § 502(e)(1)(B) could
> be alleviated by the use of the surrogate
> claim filing procedure of § 501(c).  The
> court recognized that § 501(c) is permissive,
> not mandatory, and is designed primarily to
> prevent creditors from depriving debtors of
> the benefit of a discharge under § 727 of the
> Bankruptcy Code.  The appellate court did not
> disturb the lower court's determination in
> Hemingway that the claimant and debtor as
> PRPs were co-liable and that the EPA was a
> creditor, even though it had not filed a
> proof of claim.

164 B.R. at 270.  Thus, the Court rejects the City's argument and

concludes that Claim No. 26 satisfies the second requirement of

section 502(e)(1)(B).[8]

Finally, because the City has not yet incurred any future

source control costs at 1001 E. Lincoln, Claim No. 26 is

contingent, thereby, fulfilling the third requirement of section

502(e)(1)(B).  "The determination of whether the claim is

_____

[8]    Even were this Court were to follow the reasoning set
forth in Hemingway, the City may not prevail.  Under the
principles of Hemingway, the Court would require the City to file
a surrogate claim on behalf of KDHE.  If this Court were to
disallow the claim of KDHE on grounds of lateness or otherwise,
then the City's claim would likewise be disallowed.  See 11
U.S.C. § 502(e)(1)(A) ("[T]he court shall disallow any claim for
reimbursement or contribution of an entity that is liable with
the debtor on or has secured the claim of a creditor, to the
extent that . . . such creditor's claim against the estate is
disallowed . . . ."); see also In re Bicoastal Corp., 141 B.R.
231, 234 (Bankr. M.D. Fla. 1992) (noting that, even if the court
were to permit a co-debtor to file a claim against its co-
debtor's estate, it would be disallowed because their creditor's
claim previously had been disallowed).

contingent is made at the time of allowance or disallowance of
the claim, which courts have established is the date of the
ruling." Drexel Burnham, 148 B.R. at 986. The law is clear that
"[t]he contingency contemplated by [section] 502(e)(1)(B) relates
to both payment and liability." Id. (emphasis added); accord In
re Pacor, 110 B.R. 686, 689 (E.D. Pa. 1990); Kaiser, 289 B.R. at
608; Cottonwood Canyon, 146 B.R. at 997; Windolph Trust v. Leitch
(In re Kent Holland Die Casting & Plating, Inc.), 125 B.R. 493,
501 n.4 (Bankr. W.D. Mich. 1991); In re Ace Fin. Co., 59 B.R.
667, 670 (Bankr. N.D. Ohio 1986); Baldwin-United, 55 B.R. at 895.
Therefore, a claimant's "claim is contingent until their
liability is established . . . and the co-debtor has paid the
creditor." Drexel Burnham, 148 B.R. at 987 (emphasis added).

     In the instant case, the parties' liability has been
established.  The liability of the City to KDHE has been
established by the City/KDHE Agreement, and the Debtors'
liability to the City has been established by the Wichita
Judgment.  However, it is undisputed that the City has not yet
incurred any future source control costs.  If it had, its claim
would not be contingent, and thus, beyond the reach of section
502(e)(1)(B).  However, without the incurrence of any future
response costs, Claim No. 26 is contingent.

     The City argues that this result would preclude the
allowance of any type of future claim since by its nature it will

never be paid by the time of allowance or disallowance.  The

Court disagrees, as section 502(e)(1)(B)'s contingency

requirement fosters the primary purpose of CERCLA:

> to promote expeditious cleanup of hazardous
> waste sites by authorizing private parties
> who assume financial responsibility for a
> cleanup to seek contribution from other
> responsible parties before a determination of
> who necessitated the cleanup is made.  . . .
> [Section] 502(e)(1)(B) fosters the primary
> objective of CERCLA by requiring those who
> seek contribution to incur the expenses
> relating to a cleanup before stating an
> allowable claim.

Eagle-Picher, 164 B.R. at 272; see also Bicoastal, 141 B.R. at

233 ("It is well-settled in bankruptcy law that the debtor's

estate should not be burdened by estimated claims contingent in

nature.  The Debtor should be 'expeditiously rehabilitated and

reorganized' to enable it a fresh start, while at the same time

'according fair treatment to creditors by paying ascertainable

claims as quickly as possible.'") (quoting Charter Co., 862 F.2d

at 1502).

It may appear that the Court's ruling is a harsh result for

the City, and that may be true.  Nevertheless, the Court's

decision is mandated by the express language of the Code and is

entirely consistent with the principles animating CERCLA.  At

bottom, CERCLA and similar state and federal environmental

statutes create a scheme whereby parties are incentivized to

promptly clean up contaminated sites.  The prospect of the

potential disallowance of contingent contribution claims under section 502(e)(1)(B) offers a further incentive to undertake the cleanup:  if the work is done (or at least underway), the contribution claim is not contingent as to amounts incurred by the contribution claimant.  Thus, if the City had commenced or completed source control remediation at 1001 E. Lincoln in connection with its work on the G&M Site as a whole, the City's claim would be allowed to the extent of the amounts incurred. Accord Kaiser, 289 B.R. at 608.

Because the requirements of section 502(e)(1)(B) have been satisfied, the Court concludes Claim No. 26 must be disallowed.

II.  Relief From a Final Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(5)[9]

As an alternative to disallowing Claim No. 26 pursuant to section 502(e)(1)(B), the Debtors have urged this Court to apply the Supreme Court's decision in Aviall pursuant to Federal Rule of Civil Procedure 60(b)(5) to nullify portions of the Wichita Judgment.  In Aviall, the Supreme Court limited the circumstances under which PRPs can seek contribution under section 113(f)(1). 543 U.S. at 167.  The Debtors contend that, applying Aviall, the

---

[9]    Because the Court has disallowed the City's claim under section 502(e)(1)(B), it may not appear necessary to address additional arguments.  Given that each side, however, has requested that the Court consider and give retroactive affect to different, subsequent decisions of the United States Supreme Court, and in the interest of completeness, the Court will address the arguments in turn.

City could never have established its right to maintain a cause of action for contribution and hence, Claim No. 26 should be disallowed.

On the flip side, the City would argue for the application of the Supreme Court's very recent decision in _Atlantic Research_,[10] In _Atlantic Research_, the Supreme Court answered in the affirmative a question left open by _Aviall_:  whether PRPs can maintain a direct cause of action under section 107(a) of CERCLA. _Id._  The City contends that, applying _Atlantic Research_, it had the right to prosecute a direct cost recovery action against the Debtors.  Thus, the City would seek relief from that portion of the _Wichita Judgment_ limiting it to a contribution claim under section 113(f)(1).  With a direct claim, of course, disallowance under section 502(e)(1)(B) of the Code would not be proper due to the lack of co-liability.

To summarize, the Debtors wish to apply _Aviall_ to undo the City's contribution claim obtained through the _Wichita Judgment_.

---

[10]    At the time the Court took this matter under advisement, the question of whether PRPs who undertake voluntary cleanup efforts can maintain a cause of action under section 107(a) had produced conflicting Circuit decisions and was the subject of a writ of certiorari granted by the Supreme Court. Thus, the City could only argue speculatively that if the Supreme Court rendered its decision favorably in _Atlantic Research_, PRPs could maintain a section 107(a) cause of action.  As discussed more thoroughly herein, the Supreme Court handed down its decision in _Atlantic Research_ on June 11, 2007 and the parties promptly notified the Court of the opinion.  Although not thoroughly briefed by the parties, the Court will consider the decision in this Memorandum Opinion.

The City, on the other hand, wishes to apply <u>Atlantic Research</u> to assert the direct cost recovery claim expressly precluded by the <u>Wichita Judgment</u>, and thus, avoid disallowance of the contribution claim.  The bottom line, however, is that both the Debtors and the City urge the Court, pursuant to Rule 60(b)(5), to apply new Supreme Court precedent to either nullify or expand the final and non-appealable <u>Wichita Judgment</u> rendered almost five years ago.  The Court concludes that such an application, in either direction, would be inappropriate.

Rule 60(b)(5) provides, in pertinent part, that "the court may relieve a party . . . from a final judgment, order, or proceeding [if] . . . a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application . . . ."  Motions under Rule 60(b) "may not generally substitute for an appeal."  <u>Marshall v. Bd. of Educ., Bergenfield, N.J.</u>, 575 F.2d 417, 424 (3d Cir. 1978).  "Rather, relief under Rule 60(b) is available only under such circumstances that the 'overriding interest in the finality and repose of judgments may properly be overcome.'"  <u>Harris v. Martin</u>, 834 F.2d 361, 364 (3d Cir. 1988) (quoting <u>Martinez-McBean v. Gov't of Virgin Islands</u>, 562 F.2d 908, 913 (3d Cir. 1977)).

Because of the "overriding interest in the finality and repose of judgments" . . . . the 'prior judgment' clause of Rule

23

60(b)(5) 'does not contemplate relief based merely upon precedential evolution.'" Id. (quoting Mayberry v. Maroney, 558 F.2d 1159, 1164 (3d Cir. 1977)). Rather, "'the prior judgment upon which [a judgment] is based [must have] been reversed or otherwise vacated . . . .'" Marshall, 575 F.2d at 424 (quoting 7 J. Moore, MOORE'S FEDERAL PRACTICE ¶ 60.26(3), at 325 (2d ed. 1975)); accord Harris, 834 F.2d at 364. It is not sufficient "'that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding.'" Marshall, 575 F.2d at 424 (quoting 7 MOORE'S FEDERAL PRACTICE ¶ 60.26(3), at 325). Thus, for a party to preserve its rights, an appeal is necessary. Harris, 834 F.2d at 364. In the absence of an appeal, the Third Circuit has made it clear that "the party who has suffered an adverse judgment may secure relief only from the prospective aspects of [the] judgment in the event it turns out to rest on an erroneous view of the law." Id. at 365.

In the instant case, neither the Debtors nor the City appealed the Wichita Judgment. Moreover, the Wichita Judgment does not grant any prospective relief. As the Court in Marshall explained:

> [A] judgment at law for damages for past wrongs is "inherently final," and remains unaffected by a subsequent change in the law. . . . A "prospective" injunction envisions a restraint of future conduct, not an order to remedy past wrongs when the compensation

24

payment is withheld from the beneficiaries
until some subsequent date.

575 F.2d at 425 (internal citations omitted).  The Wichita

Judgment does not restrain the Debtors' future conduct, but

rather, is no more than "an order to remedy past wrongs when the

compensation payment is withheld from the beneficiaries until

some subsequent date."  Id.

Therefore, in the absence of an appeal or any prospective

relief, Rule 60(b)(5) cannot be applied to grant the Debtors or

the City relief from the Wichita Judgment.[11]

## CONCLUSION

For the foregoing reasons, the Court concludes that Claim

No. 23 constitutes a contingent claim for contribution of an

entity that is liable with the debtor to a third party creditor.

---

[11]    Although not briefed or argued, the only remaining
clause of Rule 60(b) that could apply to the instant case is Rule
60(b)(6), which provides that "the court may relieve a party . .
. from a final judgment, order, or proceeding for . . . any other
reason justifying relief from the operation of the judgment."
This clause "'provides for extraordinary relief and may only be
invoked upon a showing of exceptional circumstances.'"  Marshall,
575 F.2d at 425 (quoting Vecchione v. Wohlgemuth, 558 F.2d 150,
159 (3d Cir. 1977)).  In the instant case, the only argument the
parties have put forth to satisfy this stringent standard is that
if the law were different, they would have prevailed (or obtained
a more favorable result) in the Wichita Action.  This is not the
type of "exceptional circumstance" contemplated by Rule 60(b)(6).
See Harris, 834 F.2d at 366 ("While judgments are subject to
being opened and retroactively modified in certain extraordinary
situations where justice demands, a change in precedent is not
one of those extraordinary circumstances.").

Therefore, it must be disallowed under section 502(e)(1)(B).

An appropriate Order follows.

BY THE COURT:

Dated: Wilmington, Delaware
      June 29, 2007        BRENDAN LINEHAN SHANNON
                    United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 05-12355 (BLS) |
| APCO LIQUIDATING TRUST and | ) | |
| APCO MISSING STOCKHOLDER | ) | Chapter 11 |
| TRUST, | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |

**ORDER**

AND NOW, this **29th** day of **JUNE, 2007**, upon consideration of the Objection of the Liquidation Trustee to Claim Nos. 22 and 23 Filed by the City of Wichita, Kansas and Motion to Estimate, if Necessary (the "Objection"), the response of the City of Wichita, Kansas thereto, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby **ORDERED** that the Objection is **SUSTAINED** and Claim No. 26 is hereby **DISALLOWED** pursuant to 11 U.S.C. § 502(e)(1)(B).

BY THE COURT:

BRENDAN LINEHAN SHANNON
United States Bankruptcy Judge

1

## <u>SERVICE LIST</u>

John H. Knight, Esq.
Jason M. Madron, Esq.
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Counsel to the Liquidating Trust

Jeffrey R. Waxman, Esq.
COZEN & O'CONNOR
1201 N. Market Street
Suite 1400
Wilmington, Delaware  19801
Counsel to the City of Wichita, Kansas

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
IN RE:                        )
                              )   Case No. 05-12355 (BLS)
APCO LIQUIDATING TRUST and    )
APCO MISSING STOCKHOLDER       )   Chapter 11
TRUST,                        )
                              )   Jointly Administered
              Debtors.        )
```

**MEMORANDUM OPINION[1]**

Before the Court is the Objection of the Liquidation Trustee

to Claim Numbers 22 and 23[2] Filed by the City of Wichita, Kansas

and Motion to Estimate, if Necessary (the "Objection") [Docket

No. 233].  For the reasons stated below, the Court will sustain

the Objection and disallow the claims pursuant to section

502(e)(1)(B) of the Bankruptcy Code (the "Code").

**BACKGROUND**

Almost twenty years prior to the filing of the above-

captioned bankruptcy cases (the "Cases"), in 1986, the Kansas

Department of Health and Environment ("KDHE") discovered

hazardous contaminants in the groundwater at a 3,850 acre

industrial area near the city center of Wichita, known as the

---

[1]  This Opinion constitutes the findings of facts and
conclusions of law of the Court pursuant to Federal Rule of
Bankruptcy Procedure 7052.

[2]  Claim Numbers 22 and 23 have been amended and
superceded by Claim Number 26.  This Memorandum Opinion,
therefore, addresses Claim Number 26.

Gilbert and Mosley site (the "G&M Site").[3]  The G&M Site contains approximately 8,000 parcels of land, over 400 of which are owned by the City.  One parcel within the G&M Site, located at 1001 East Lincoln Street ("1001 E. Lincoln"), was owned by APCO Oil Corporation[4] until 1971.

Four years after the initial contamination discovery, KDHE completed an investigation into the potential and actual contamination at the G&M Site pursuant to the Comprehensive Environmental Response, Comprehension and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675 (2006).  It located multiple sources of groundwater contamination and identified over 500 potentially responsible parties ("PRPs").  Shortly thereafter, on March 26, 1991, the City, which had not been identified as a PRP at that time, voluntarily entered into an agreement with KDHE,

---

[3]    The facts and circumstances of the events surrounding the G&M Site contamination recounted herein are substantially derived from the two Memorandum Opinions of the United States District Court for the District of Kansas resolving the City's lawsuit commenced in 1998 against twenty-seven alleged PRPs.  The Memorandum Opinions - City of Wichita v. Aero Holdings, Inc., 177 F. Supp. 2d 1153 (D. Kan. 2000), and City of Wichita v. Trustees of APCO Oil Corp. Liquidating Trust, 306 F. Supp. 2d 1040 (D. Kan. 2003) - are attached as Exhibits A and B to the Supplemental Memorandum of Law in Support of the Liquidation Trustee's Objection to Claim by City of Wichita, Kansas [Docket No. 257] [hereinafter, Memorandum of Law].

[4]    APCO Oil Corporation was voluntarily dissolved by its shareholders on September 29, 1978.  Shortly thereafter, APCO Liquidating Trust and the APCO Missing Stockholder Trust (the "Debtors") were formed pursuant to an order of the Court of Chancery of the State of Delaware.

entitled "Settlement Agreement for Remedial Investigation and Feasibility Study, and for Certain Remedial Actions to be Determined Following Opportunity for Public Involvement" (the "City/KDHE Agreement"). <u>See</u> <u>generally</u> Memorandum of Law, Ex. C. Pursuant to the City/KDHE Agreement, the City agreed to perform a remedial investigation and feasibility study ("RI/FS") of the G&M Site and, ultimately, to undertake the remedial activities identified in the RI/FS necessary to clean up the G&M Site.

Seven years later, the City commenced a lawsuit pursuant to sections 9607(a) and 9613(f)(1) of CERCLA in the United States District Court for the District of Kansas seeking to recover its past and future response costs of investigating and cleaning the contamination from twenty-seven alleged PRPs, including the Debtors (the "Wichita Action"). After a lengthy trial, the Debtors were determined to be liable under section 9613(f)(1) for 1.72% of the City's past and future response costs of groundwater remediation for the entire G&M Site and for 100% of the City's future source control costs to be incurred at 1001 E. Lincoln. <u>See</u> <u>City of Wichita v. Trs. of APCO Oil Corp. Liquidating Trust</u>, 306 F. Supp. 2d 1040, 1046 (D. Kan. 2003) [hereinafter <u>Wichita Judgment</u>]. In 2004, the Debtors partially satisfied the <u>Wichita Judgment</u>, paying $467,273.10 for their 1.72% allocable share of the City's groundwater remediation costs for the entire G&M Site.

On August 19, 2005, the Debtors commenced the Cases, seeking

protection under chapter 11 of the Code.  The City timely filed a proof of claim ("Claim No. 26") based upon the unsatisfied portion of the <u>Wichita Judgment</u> awarding the City 100% of the future source control costs to be incurred at 1001 E. Lincoln. Claim No. 26 estimates the City's future source control costs to be $1,325,527.  <u>See</u> Objection, Ex. G.  The United States Environmental Protection Agency also filed a proof of claim seeking reimbursement for $32,112.31 in past response costs incurred at the G&M Site.  <u>See</u> Memorandum of Law, Ex. C.  KDHE has not filed a proof of claim against the Debtors based upon the contamination of the G&M Site.

On December 12, 2006, John G. McMillian, the liquidation trustee (the "Liquidation Trustee"), filed the Objection, primarily urging this Court to disallow Claim No. 26 because (1) it is a contingent claim for contribution pursuant to section 502(e)(1)(B); and (2) the City cannot maintain a cause of action under CERCLA after the Supreme Court's decision in <u>Cooper Industries, Inc. v. Aviall Services, Inc.</u>, 543 U.S. 157 (2004). On December 29, 2006, before the City responded to the Objection, the Liquidation Trustee filed a motion to transfer venue of the Objection to the United States District Court for the District of Kansas (the "Motion to Transfer Venue") [Docket No. 237].

A hearing on the Motion to Transfer Venue was held on January 18, 2007, at which time the Court decided to withhold

ruling on the Motion to Transfer Venue pending disposition of the legal question of disallowance under section 502(e)(1)(B).  To that end, the Court requested further briefing regarding section 502(e)(1)(B) and the Supreme Court's decision in <u>Aviall</u>.

On March 28, 2007, the City responded to the Objection, denying that Claim No. 26 was a contingent claim for contribution.  According to the City, the claim arose from a final judgment rendering the Debtors <u>directly</u> liable to the City (and thus, not liable via principles of contribution) for the future source control costs to be incurred at 1001 E. Lincoln. Further, the City opposed any adverse application of <u>Aviall</u> to its claim, arguing that:  (1) the principles of <u>stare</u> <u>decisis</u> and <u>res</u> <u>judicata</u> prevent the parties from re-litigating issues resolved by the <u>Wichita Judgment</u>; (2) the standards of Federal Rule of Civil Procedure 60(b)(5) do not apply to allow the Debtors to obtain relief from the <u>Wichita Judgment</u>; and finally, (3) even if the Court were to grant relief from the <u>Wichita Judgment</u> under Rule 60(b)(5) and apply <u>Aviall</u>, the City continues to have causes of action under both section 9613(f)(1) and 9607(a) of CERCLA.

A hearing on the Objection was held on May 5, 2007, at which time the Court took the matter under advisement.

This matter is ripe for decision.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

**DISCUSSION**

I.    Disallowance Pursuant to 11 U.S.C. § 502(e)(1)(B)

The Debtors contend that Claim No. 26 must be disallowed under section 502(e)(1)(B) because it is a contingent claim for contribution.  Pursuant to section 502(e)(1)(B), "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that . . . such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution . . . ."  11 U.S.C. § 502(e)(1)(B).  For a claim to be disallowed under this section, three requirements must be satisfied:  "(1) the claim must be one for reimbursement or contribution; (2) the entity asserting the claim for reimbursement or contribution must be 'liable with the debtor' on the claim; and (3) the claim must be contingent at the time of its allowance or disallowance."  In re Provincetown-Boston Airlines, Inc., 72 B.R. 307, 309 (Bankr. M.D. Fla. 1987); accord In re Eagle-Picher Indus., Inc., 164 B.R. 265, 268 (S.D. Ohio 1994); In re GCO Servs., LLC, 324 B.R. 459,

6

465 (Bankr. S.D.N.Y. 2005); In re Drexel Burnham Lambert Group, 148 B.R. 982, 985 (Bankr. S.D.N.Y. 1992). Because the Court concludes that Claim No. 26 satisfies each of these three requirements, the claim must be disallowed.

First, Claim No. 26 is a claim for contribution. "Whether a claim is one for reimbursement or contribution depends on its characterization under state or federal statutory law or common law." 4 COLLIER ON BANKRUPTCY ¶ 502.06[2][a] (Alan N. Resnick et al. eds., 15th ed. rev. 2006); see, e.g., Provincetown-Boston, 72 B.R. at 310 ("[The Debtor's] duty to indemnify [the claimant] if both are found ultimately liable in the class action suit would arise independent of the Underwriting Agreement under the joint and several liability created by federal statute.").

Under CERCLA, two distinct causes of action have been created by Congress: "cost recovery" under 42 U.S.C. § 9607(a), commonly known as section 107(a), and "contribution" under 42 U.S.C. § 9613(f)(1), commonly known as section 113(f)(1). Under a section 107(a) "cost recovery" action,[5] a party, such as a

---

[5]    Section 107(a) provides, in pertinent part:

Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section -

. . .

(2)  any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous

private party landowner or the United States government, who has
incurred cleanup and remediation costs at a hazardous waste site,
may seek to recover its full response costs from a party or
parties who may be potentially responsible for the contamination.
See generally United States v. Atl. Research Corp., 127 S. Ct.
2331 (2007).  The apportionment of liability under section 107(a)
is strict, joint, and several - "without regard to fault or
willfulness".  H.R. Rep. No. 99-253(I), at 74 (1985), reprinted
in 1986 U.S.C.C.A.N. 2835, 2856; New Castle County v. Halliburton
Nus Corp., 111 F.3d 1116, 1120-21 (3d Cir. 1997); In re Kaiser

---

substances were disposed of,

. . .

shall be liable for -

(A)  all costs of removal or remedial
action incurred by the United States
Government or a State or an Indian tribe not
inconsistent with the national contingency
plan;

(B)  any other necessary costs of
response incurred by any other person
consistent with the national contingency
plan;

(C)  damages for injury to, destruction
of, or loss of natural resources, including
the reasonable costs of assessing such
injury, destruction, or loss resulting from
such a release; and

(D)  the costs of any health assessment
or health effects study . . . .

42 U.S.C. § 9607(a).

8

Group Int'l, Inc., 289 B.R. 597, 602 (Bankr. D. Del. 2003). Therefore, under section 107(a), "once liability is demonstrated, a [defendant] PRP may be held liable for the entire cost of cleanup, even if multiple PRPs are involved." Wichita Judgment at 1048-49.

Under a section 113(f)(1) "contribution" action,[6] a PRP is granted the right to recoup from other PRPs the portion of its cleanup and remediation costs "which exceeds its fair share of the overall liability." New Castle County, 111 F.3d at 1121; see also Atl. Research, 127 S. Ct. at 2331; Kaiser, 289 B.R. at 603. In other words, under section 113(f)(1), "an individual PRP which has been left with the entire cleanup cost . . . may seek contribution from and attempt to apportion liability to other

---

[6]    Section 113(f) provides, in pertinent part:

(1)   Contribution

Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. . . . . In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f)(1).

9

PRPs . . . ." <u>Wichita Judgment</u> at 1049.  In contrast to a section 107(a) action in which liability is joint and several, under section 113(f)(1), a court is called upon to allocate the response costs among the PRPs based upon each PRP's percentage of fault and, to do so, may use "such equitable factors as the court determines are appropriate."  42 U.S.C. § 9613(f)(1).

In the instant case, Claim No. 26 arises from a declaratory judgment obtained by the City against the Debtors for contribution under section 113(f)(1).  <u>See generally</u> <u>Wichita Judgment</u> at 1117-18.  Because, as a matter of law, section 113(f)(1) provides only for an express right of contribution, the first requirement of section 502(e)(1)(B) has been satisfied. <u>See, e.g.</u>, <u>Syntex Corp. v. Charter Co. (In re Charter Co.)</u>, 862 F.2d 1500, 1502-03 (11th Cir. 1989) ("These claims fall within the ambit of § 502(e)(1)(B).  All are claims for reimbursement or contribution pursuant to 42 U.S.C. § 9613(f)(1) . . . ."); <u>Eagle-Picher</u>, 164 B.R. at 268 ("The parties further agreed that the claims in issue are for reimbursement, since the claimants seek payment from [the Debtor] for costs in be incurred and their claims arise under CERCLA § 113(f) . . . ."); <u>In re New York Trap Rock Corp.</u>, 153 B.R. 648, 651 (Bankr. S.D.N.Y. 1993) ("A contingent CERCLA claim that is not a direct claim between the parties but depends upon the co-liability of the parties . . . is a disallowable claim for reimbursement or contribution"); <u>In re</u>

Cottonwood Canyon Land Co., 146 B.R. 992, 996-97 (Bankr. D. Colo. 1992) (holding claim subject to section 502(e)(1)(B) because, while claimant argued it sought allowance of a direct claim under section 107(a) of CERCLA, court determined that claimant clearly sought contribution from the Debtor).

In support of the allowance of Claim No. 26, the City has argued that, because the Wichita Judgment held the Debtors 100% liable for the future source control costs at 1001 E. Lincoln, and not merely for their allocable share, its claim is not one for contribution under section 113(f)(1), but rather, one for a direct cost recovery under section 107(a). The Court cannot agree. First, and perhaps, most importantly, the District Court in Kansas determined that the City was a PRP, and further determined that the City was precluded from maintaining a cost recovery action under section 107(a). Wichita Judgment at 1050-52.[7] Therefore, foreclosed from maintaining a cause of action under section 107(a), the Court held that the City could "only bring a contribution action under CERCLA § 113(f)." Id. at 1052. It was exclusively under this section of CERCLA that the Court premised the Debtors' liability. See generally id. at 1050, 1117-18.

---

[7]    As more thoroughly discussed herein, the Supreme Court recently has held that PRPs may maintain a cost recovery action under section 107(a). See Atl. Research, 127 S. Ct. at 2331.

Second, despite the City's assertions to the contrary, the Debtors were, in fact, held liable for their allocable share of the City's future source control costs to be incurred at the entire G&M Site. Following the City/KDHE Agreement, the City became responsible for all of the future source control costs to be incurred at the entire G&M Site notwithstanding the City's actual percentage of fault. Because of this inequitable distribution of liability, shortly thereafter, pursuant to section 113(f)(1), the City sought contribution from the Debtors' for their allocable share of these overall costs. Id. at 1117. Rather than declaring the Debtors liable for a percentage of the source control measures to be taken at the approximate 8,000 parcels within the G&M Site, the Court determined that the Debtors were liable only for the measures to be taken at one parcel - 1001 E. Lincoln. Id. The future source control costs for this parcel amount to the Debtors' allocable share of the City's overall liability for the future source control costs to be incurred at the entire G&M Site. As such, Claim No. 26 arises from a claim for contribution, fulfilling the first requirement of section 502(e)(1)(B).

Because Claim No. 26 arises from a section 113(f)(1) claim for contribution, it is, as a matter of law, a claim for which both the City and the Debtors are responsible, thereby fulfilling the second, and perhaps most important, requirement of section

502(e)(1)(B).  See 4 Collier on Bankruptcy ¶ 502.06[2][d] ("In
addition to codebtor situations created by contract, section
502(e)(1)(B) applies to disallow contingent reimbursement or
contribution claims created by statute.  For example, a claim for
contribution arising under [CERCLA] may be a contingent claim
subject to disallowance under section 502(e)(1)(B).  In such a
case, the government is the primary obligee that may seek
satisfaction of its claim against the debtor from third parties
who, under the statute, are obligated with the debtor to the
government on the same debt.  The statute under which the
third-party liability is created, however, must provide for a
reimbursement or contribution claim against the debtor."); see
also Cottonwood Canyon, 146 B.R. at 996 (explaining that a
contribution claim under CERCLA "would necessarily be one for
liability for which both [the claimant and the debtor] are
responsible and would fall within the ambit of 11 U.S.C. §
502(e)."); In re Baldwin-United Corp., 55 B.R. 885, 891 (Bankr.
S.D. Ohio 1985) (applying section 502(e)(1)(B) to contribution
claims arising under securities laws and noting, "By its very
nature a claim for contribution presupposes a sharing of
liability and thus a codebtor relationship."); accord GCO, 324
B.R. at 466 (disallowing contribution claims arising under
ERISA).

    "The co-liability requirement - that the claimant be 'liable

13

with' the debtor on the claim of a third party 'creditor' - illuminates the central purpose of § 502(e)(1)(B)." Dant & Russell, Inc. v. Burlington N. R.R. Co. (In re Dant & Russell, Inc.), 951 F.2d 246, 248 (9th Cir. 1991). "The sole purpose served by section 502(e)(1)(B) is to preclude redundant recoveries on identical claims against insolvent estates in violation of the fundamental Code policy fostering equitable distribution among all creditors of the same class." Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 923 (1st Cir. 1993); accord Dant & Russell, 951 F.2d at 248.

While no "double-dipping" threat applies to claims arising under section 107(a) due to the lack of a third party creditor, claims premised upon section 113(f)(1) do implicate such a threat. This is because a judgment obtained under section 113(f)(1) presupposes co-liability between the plaintiff and the defendant. "A prima facie showing under § 113(f) is simply a determination that the defendant PRP would otherwise be held jointly and severally liable under § 107(a)." Wichita Judgment at 1049. As the court in Farmland Industries, Inc. v. Colorado & Eastern Railroad Co. explained:

> In Environmental Transp. Systems, Inc. v. ENSCO, Inc., 969 F.2d 503, 509 (7th Cir. 1992) . . ., the Seventh Circuit set forth the elements of a prima facie case for contribution under § 9613(f) as follows: "(1) that the site in question is a 'facility' as defined by CERCLA; (2) that the Defendant is a 'responsible person' for the spill as

14

> defined by CERCLA; (3) there was a release of
> hazardous substances; and (4) such release
> caused the Plaintiff to incur response
> costs." <u>Id.</u> at 506.  "If the plaintiff
> establishes each of these elements and the
> defendant is unable to establish the
> applicability of one of the defenses listed
> in § 9607(b) the plaintiff is entitled to
> summary judgment on the liability issue."
> <u>Amoco Oil Co. v. Borden, Inc.</u>, 889 F.2d 664,
> 668 (5th Cir. 1989).  A prima facie showing
> under § 9613 is, therefore, simply a
> determination that under § 9607 the defendant
> would be jointly and severally liable.

922 F. Supp. 437, 440 (D. Colo. 1996), <u>remanded by</u> 50 F.3d 1530,

1536 (10th Cir. 1995) ("In our case, Farmland's claim against the

CERC parties must be classified as one for contribution.  . . .

Whatever label Farmland may wish to use, its claim remains one by

and between jointly and severally liable parties for an

appropriate division of the payment one of them has been

compelled to make.").

Here, the City successfully proved the elements of section

113(f)(1) to obtain an award of contribution from the Debtors.

Therefore, as a matter of law, the Debtors are co-liable with the

City to KDHE for the future source control costs at 1001 E.

Lincoln.

The City argues that KDHE's failure to timely file a proof

of claim in these Cases vitiates any co-liability the Debtors may

have with the City to KDHE.  In support, the City relies on the

First Circuit's ruling in <u>Hemingway</u>.  In <u>Hemingway</u>, a post-

petition purchaser of a contaminated parcel of land sought

contribution from the Debtors' estate for future costs of cleanup. 993 F.2d at 919-20. The chapter 7 trustee objected, citing to section 502(e)(1)(B). <u>Id.</u> While the purchaser filed a proof of claim against the estate for these costs, the EPA chose to forgo that option. <u>Id.</u> at 925. Instead, the EPA commenced an administrative enforcement action against the purchaser. <u>Id.</u> According to the court, without the EPA's claim, only "a remote double-dipping" prospect existed. <u>Id.</u> at 926. As a result, the court in <u>Hemingway</u> remanded the case to provide the chapter 7 trustee and the purchaser time to file a surrogate claim on the EPA's behalf. <u>Id.</u> at 929. Should the trustee or the purchaser fail to file a surrogate EPA claim, the court held that the purchaser's claim would be allowed since the purchaser would be no longer "liable with" the Debtors to the EPA. <u>Id.</u> at 925-29; <u>see also</u> <u>Norpak Corp. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus. Inc.)</u>, 131 F.3d 1185, 1188-89 (6th Cir. 1997) (remanding case so that lower court could determine whether the third party creditors' failure to timely file proofs of claim was the result of excusable neglect); <u>In re A & H, Inc.</u>, 122 B.R. 84, 86 (Bankr. W.D. Wis. 1990) (noting the possibility that had the codebtor not filed a proof of claim on behalf of the third party creditor, the debtor may not have been co-liable to the third party creditor).

Relying on the court's reasoning in <u>Hemingway</u>, the City has

16

argued that, in the instant case, there is no "double dipping threat". Currently, there is no proof of claim filed by KDHE and the bar date has long since passed. Thus, according to the City, KDHE is unable to seek payment from the Debtors' estate for the same future source control costs currently sought by the City. As such, the City urges this Court to find that it is the sole holder of a claim against the Debtors' estate for these costs.

The Court cannot agree with the City's position. In the instant case, it is undisputed that the bar date for KDHE to file a proof of claim passed more than one year ago and that KDHE has failed to file a claim against the Debtors' estates. Nonetheless, the failure of KDHE to file a claim does not alter the co-liability of the Debtors and the City to KDHE. As other courts have observed, "section 502(e) does not require that a proof of claim be filed in the proceeding to be liable with the debtor. Application of [section 502(e)(1)(B)] 'is not premised on the actual filing of multiple claims but, rather, on the existence of such claims.'" In re Lull Corp., 162 B.R. 234, 238 (Bankr. D. Minn. 1993) (quoting Cottonwood Canyon, 146 B.R. at 997).

Moreover, as the court in Eagle-Picher explained, the Hemingway decision does not undermine this Court's determination that the City and the Debtors are co-liable to KDHE, despite KDHE's failure to file a proof of claim:

17

The appellate decision in <u>Hemingway</u> does not undermine the bankruptcy court's reasoning in the present case.  The appellate court simply determined that the harsh results stemming from the application of § 502(e)(1)(B) could be alleviated by the use of the surrogate claim filing procedure of § 501(c).  The court recognized that § 501(c) is permissive, not mandatory, and is designed primarily to prevent creditors from depriving debtors of the benefit of a discharge under § 727 of the Bankruptcy Code.  The appellate court did not disturb the lower court's determination in <u>Hemingway</u> that the claimant and debtor as PRPs were co-liable and that the EPA was a creditor, even though it had not filed a proof of claim.

164 B.R. at 270.  Thus, the Court rejects the City's argument and concludes that Claim No. 26 satisfies the second requirement of section 502(e)(1)(B).[8]

Finally, because the City has not yet incurred any future source control costs at 1001 E. Lincoln, Claim No. 26 is contingent, thereby, fulfilling the third requirement of section 502(e)(1)(B).  "The determination of whether the claim is

---

[8]    Even were this Court were to follow the reasoning set forth in <u>Hemingway</u>, the City may not prevail.  Under the principles of <u>Hemingway</u>, the Court would require the City to file a surrogate claim on behalf of KDHE.  If this Court were to disallow the claim of KDHE on grounds of lateness or otherwise, then the City's claim would likewise be disallowed.  <u>See</u> 11 U.S.C. § 502(e)(1)(A) ("[T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that . . . such creditor's claim against the estate is disallowed . . . .");  <u>see also</u> <u>In re Bicoastal Corp.</u>, 141 B.R. 231, 234 (Bankr. M.D. Fla. 1992) (noting that, even if the court were to permit a co-debtor to file a claim against its co-debtor's estate, it would be disallowed because their creditor's claim previously had been disallowed).

contingent is made at the time of allowance or disallowance of the claim, which courts have established is the date of the ruling." Drexel Burnham, 148 B.R. at 986.  The law is clear that "[t]he contingency contemplated by [section] 502(e)(1)(B) relates to both payment and liability." Id. (emphasis added); accord In re Pacor, 110 B.R. 686, 689 (E.D. Pa. 1990); Kaiser, 289 B.R. at 608; Cottonwood Canyon, 146 B.R. at 997; Windolph Trust v. Leitch (In re Kent Holland Die Casting & Plating, Inc.), 125 B.R. 493, 501 n.4 (Bankr. W.D. Mich. 1991); In re Ace Fin. Co., 59 B.R. 667, 670 (Bankr. N.D. Ohio 1986); Baldwin-United, 55 B.R. at 895. Therefore, a claimant's "claim is contingent until their liability is established . . . and the co-debtor has paid the creditor." Drexel Burnham, 148 B.R. at 987 (emphasis added).

In the instant case, the parties' liability has been established.  The liability of the City to KDHE has been established by the City/KDHE Agreement, and the Debtors' liability to the City has been established by the Wichita Judgment.  However, it is undisputed that the City has not yet incurred any future source control costs.  If it had, its claim would not be contingent, and thus, beyond the reach of section 502(e)(1)(B).  However, without the incurrence of any future response costs, Claim No. 26 is contingent.

The City argues that this result would preclude the allowance of any type of future claim since by its nature it will

never be paid by the time of allowance or disallowance.  The

Court disagrees, as section 502(e)(1)(B)'s contingency

requirement fosters the primary purpose of CERCLA:

> to promote expeditious cleanup of hazardous
> waste sites by authorizing private parties
> who assume financial responsibility for a
> cleanup to seek contribution from other
> responsible parties before a determination of
> who necessitated the cleanup is made.  . . .
> [Section] 502(e)(1)(B) fosters the primary
> objective of CERCLA by requiring those who
> seek contribution to incur the expenses
> relating to a cleanup before stating an
> allowable claim.

Eagle-Picher, 164 B.R. at 272; see also Bicoastal, 141 B.R. at

233 ("It is well-settled in bankruptcy law that the debtor's

estate should not be burdened by estimated claims contingent in

nature.  The Debtor should be 'expeditiously rehabilitated and

reorganized' to enable it a fresh start, while at the same time

'according fair treatment to creditors by paying ascertainable

claims as quickly as possible.'") (quoting Charter Co., 862 F.2d

at 1502).

    It may appear that the Court's ruling is a harsh result for

the City, and that may be true.  Nevertheless, the Court's

decision is mandated by the express language of the Code and is

entirely consistent with the principles animating CERCLA.  At

bottom, CERCLA and similar state and federal environmental

statutes create a scheme whereby parties are incentivized to

promptly clean up contaminated sites.  The prospect of the

potential disallowance of contingent contribution claims under section 502(e)(1)(B) offers a further incentive to undertake the cleanup: if the work is done (or at least underway), the contribution claim is not contingent as to amounts incurred by the contribution claimant. Thus, if the City had commenced or completed source control remediation at 1001 E. Lincoln in connection with its work on the G&M Site as a whole, the City's claim would be allowed to the extent of the amounts incurred. Accord Kaiser, 289 B.R. at 608.

Because the requirements of section 502(e)(1)(B) have been satisfied, the Court concludes Claim No. 26 must be disallowed.

II.  Relief From a Final Judgment Pursuant to Federal Rule of Civil Procedure 60(b)(5)[9]

As an alternative to disallowing Claim No. 26 pursuant to section 502(e)(1)(B), the Debtors have urged this Court to apply the Supreme Court's decision in Aviall pursuant to Federal Rule of Civil Procedure 60(b)(5) to nullify portions of the Wichita Judgment. In Aviall, the Supreme Court limited the circumstances under which PRPs can seek contribution under section 113(f)(1). 543 U.S. at 167. The Debtors contend that, applying Aviall, the

---

[9]  Because the Court has disallowed the City's claim under section 502(e)(1)(B), it may not appear necessary to address additional arguments. Given that each side, however, has requested that the Court consider and give retroactive affect to different, subsequent decisions of the United States Supreme Court, and in the interest of completeness, the Court will address the arguments in turn.

City could never have established its right to maintain a cause of action for contribution and hence, Claim No. 26 should be disallowed.

On the flip side, the City would argue for the application of the Supreme Court's very recent decision in <u>Atlantic Research</u>,[10]  In <u>Atlantic Research</u>, the Supreme Court answered in the affirmative a question left open by <u>Aviall</u>:  whether PRPs can maintain a direct cause of action under section 107(a) of CERCLA. <u>Id.</u>  The City contends that, applying <u>Atlantic Research</u>, it had the right to prosecute a direct cost recovery action against the Debtors.  Thus, the City would seek relief from that portion of the <u>Wichita Judgment</u> limiting it to a contribution claim under section 113(f)(1).  With a direct claim, of course, disallowance under section 502(e)(1)(B) of the Code would not be proper due to the lack of co-liability.

To summarize, the Debtors wish to apply <u>Aviall</u> to undo the City's contribution claim obtained through the <u>Wichita Judgment</u>.

---

[10]    At the time the Court took this matter under advisement, the question of whether PRPs who undertake voluntary cleanup efforts can maintain a cause of action under section 107(a) had produced conflicting Circuit decisions and was the subject of a writ of certiorari granted by the Supreme Court. Thus, the City could only argue speculatively that if the Supreme Court rendered its decision favorably in <u>Atlantic Research</u>, PRPs could maintain a section 107(a) cause of action.  As discussed more thoroughly herein, the Supreme Court handed down its decision in <u>Atlantic Research</u> on June 11, 2007 and the parties promptly notified the Court of the opinion.  Although not thoroughly briefed by the parties, the Court will consider the decision in this Memorandum Opinion.

The City, on the other hand, wishes to apply <u>Atlantic Research</u> to assert the direct cost recovery claim expressly precluded by the <u>Wichita Judgment</u>, and thus, avoid disallowance of the contribution claim.  The bottom line, however, is that both the Debtors and the City urge the Court, pursuant to Rule 60(b)(5), to apply new Supreme Court precedent to either nullify or expand the final and non-appealable <u>Wichita Judgment</u> rendered almost five years ago.  The Court concludes that such an application, in either direction, would be inappropriate.

Rule 60(b)(5) provides, in pertinent part, that "the court may relieve a party . . . from a final judgment, order, or proceeding [if] . . . a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application . . . ."  Motions under Rule 60(b) "may not generally substitute for an appeal."  <u>Marshall v. Bd. of Educ., Bergenfield, N.J.</u>, 575 F.2d 417, 424 (3d Cir. 1978).  "Rather, relief under Rule 60(b) is available only under such circumstances that the 'overriding interest in the finality and repose of judgments may properly be overcome.'"  <u>Harris v. Martin</u>, 834 F.2d 361, 364 (3d Cir. 1988) (quoting <u>Martinez-McBean v. Gov't of Virgin Islands</u>, 562 F.2d 908, 913 (3d Cir. 1977)).

Because of the "overriding interest in the finality and repose of judgments" . . . . the 'prior judgment' clause of Rule

23

60(b)(5) 'does not contemplate relief based merely upon precedential evolution.'" <u>Id.</u> (quoting <u>Mayberry v. Maroney</u>, 558 F.2d 1159, 1164 (3d Cir. 1977)). Rather, "'the prior judgment upon which [a judgment] is based [must have] been reversed or otherwise vacated . . . .'" <u>Marshall</u>, 575 F.2d at 424 (quoting 7 J. Moore, MOORE'S FEDERAL PRACTICE ¶ 60.26(3), at 325 (2d ed. 1975)); <u>accord</u> <u>Harris</u>, 834 F.2d at 364. It is not sufficient "'that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding.'" <u>Marshall</u>, 575 F.2d at 424 (quoting 7 MOORE'S FEDERAL PRACTICE ¶ 60.26(3), at 325). Thus, for a party to preserve its rights, an appeal is necessary. <u>Harris</u>, 834 F.2d at 364. In the absence of an appeal, the Third Circuit has made it clear that "the party who has suffered an adverse judgment may secure relief only from the prospective aspects of [the] judgment in the event it turns out to rest on an erroneous view of the law." <u>Id.</u> at 365.

In the instant case, neither the Debtors nor the City appealed the <u>Wichita Judgment</u>. Moreover, the <u>Wichita Judgment</u> does not grant any prospective relief. As the Court in <u>Marshall</u> explained:

> [A] judgment at law for damages for past wrongs is "inherently final," and remains unaffected by a subsequent change in the law. . . . A "prospective" injunction envisions a restraint of future conduct, not an order to remedy past wrongs when the compensation

payment is withheld from the beneficiaries until some subsequent date.

575 F.2d at 425 (internal citations omitted).  The <u>Wichita Judgment</u> does not restrain the Debtors' future conduct, but rather, is no more than "an order to remedy past wrongs when the compensation payment is withheld from the beneficiaries until some subsequent date."  <u>Id.</u>

Therefore, in the absence of an appeal or any prospective relief, Rule 60(b)(5) cannot be applied to grant the Debtors or the City relief from the <u>Wichita Judgment</u>.[11]

## CONCLUSION

For the foregoing reasons, the Court concludes that Claim No. 23 constitutes a contingent claim for contribution of an entity that is liable with the debtor to a third party creditor.

---

[11]    Although not briefed or argued, the only remaining clause of Rule 60(b) that could apply to the instant case is Rule 60(b)(6), which provides that "the court may relieve a party . . . from a final judgment, order, or proceeding for . . . any other reason justifying relief from the operation of the judgment." This clause "'provides for extraordinary relief and may only be invoked upon a showing of exceptional circumstances.'" <u>Marshall</u>, 575 F.2d at 425 (quoting <u>Vecchione v. Wohlegemuth</u>, 558 F.2d 150, 159 (3d Cir. 1977)).  In the instant case, the only argument the parties have put forth to satisfy this stringent standard is that if the law were different, they would have prevailed (or obtained a more favorable result) in the Wichita Action.  This is not the type of "exceptional circumstance" contemplated by Rule 60(b)(6). <u>See</u> <u>Harris</u>, 834 F.2d at 366 ("While judgments are subject to being opened and retroactively modified in certain extraordinary situations where justice demands, a change in precedent is not one of those extraordinary circumstances.").

Therefore, it must be disallowed under section 502(e)(1)(B).

An appropriate Order follows.

BY THE COURT:

Dated: Wilmington, Delaware
       June 29, 2007

BRENDAN LINEHAN SHANNON
United States Bankruptcy Judge

26

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

**APPEAL TRANSMITTAL SHEET**

Case Number: _05-12355_____    ●BK    ○AP
   If AP, related BK Case Number: _____

Title of Order Appealed:
_see attachment_____

     Docket Number: _277, 278_     Date Entered: _6/29/2007_____

Item Transmitted:  ●Notice of Appeal    ○Motion for Leave to Appeal
                ○Amended Notice of Appeal  ○Cross Appeal
                Docket Number: _279_____    Date Filed: _7/9/2007_____

*Appellant/Cross Appellant:         *Appellee/Cross Appellee
_City of Wichita, Kansas_____  _Apco Liquidating Trust_____ ▪
Counsel for Appellant:              Counsel for Appellee:
_see attachment_____ ▪  _see attachment_____

_____  _____

_____  _____

_____  _____

_____  _____

*If additional room is needed, please attach a separate sheet.

Filing Fee paid?  ●Yes  ○No

IFP Motion Filed by Appellant?  ○Yes  ●No

Have Additional Appeals to the Same Order been Filed? ○Yes  ●No
   If so, has District Court assigned a Civil Action Number?  ○Yes ○No  Civil Action # _____

Additional Notes:

_____

_7/31/2007_____     By: _M. Lopez_____
Date                         Deputy Clerk

                             FOR USE BY U.S. BANKRUPTCY COURT

Bankruptcy Court Appeal (BAP) Number: _07-71_____
7/6/06

## ATTACHMENT

Title of Order Appealed:

Memorandum Opinion Sustaining the Objection of the Liquidation Trustee to Claim Numbers 22 and 23 Filed by the City of Wichita, Kansas

and

Order Sustaining the Objection of the Liquidation Trustee to Claim Numbers 22 and 23 Filed by the City of Wichita, Kansas

Counsel for Appellant:

Jeffrey R. Waxman, Esquire
Cozen O'Connor
1201 N. Market Street, Suite 1400
Wilmington, DE 19801
302-295-2000

Mark S. Carder, Esquire
Stinson Morrison Hecker, LLP
1201 Walnut Street, Suite 2900
Kansas City, MO 64106-2150
816-482-8600

Office of the City Attorney
Gary E. Rebenstorf, City Attorney
Joe Allen Lang, Chief Deputy City Attorney
Sharon L. Dickgrafe, Ass't City Attorney
City Hall - 13th Floor
455 North Main Street
Wichita, KS 67202
316-268-4681

Counsel for Appellee:

John Henry Knight, Esquire
Richards Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
302-651-7700


Neal H. Weinfield, Esquire
Greenburg Traurig LLP
77 W. Wacker Dr., Ste. 2500
Chicago, IL 60601-1732
312-456-8400